# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKY ATTERBERRY, | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0470-C |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the August 17, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine, obesity, and borderline intellectual functioning. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.**
>
> **2.     The claimant has not engaged in substantial gainful activity since August 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.     The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), lumbar degenerative disc disease, and obesity (20 CFR 404.1520(c) and 416.920 (c)).**
>
> .   .   .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .   .   .
>
> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *nearly* the full range of light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b). She should never climb ladders, ropes or scaffolds and only occasionally stoop, squat, or crawl. She should have no exposure to unprotected heights.**
>
> .   .   .
>
> The claimant underwent a second consultative medical exam on December 3, 2013 performed by Andre Fontana, M.D. Dr. Fontana reviewed the claimant's treatment history and performed a clinical exam that included range of motion, strength, and reflex testing. Dr. Fontana noted that the claimant had an excellent heel-toe gait and negative straight leg raises. She had some discomfort in the back cause[d] by range of motion testing of the hip and had a reduced range of motion in the lumbar spine to 30 degrees flexion, 5 degrees extension and 10 degrees bilaterally. Dr. Fontana noted that x-rays of the claimant's lumbar spine were normal other than possible slight spondylolisthesis at L5-S1. Dr. Fontana opined that the claimant can lift up to 25 pounds occasionally and 10 pounds

frequently and that she can sit, stand or walk for up to eight hours in an eight-hour workday. She has no limitation is using her hands or feet. She should never climb and only occasionally bend, squat, or crawl and frequently reach. She should have no exposure to unprotected heights. Great weight is assigned to the opinion of Dr. Fontana because his opinion is very credible as a non-treating source. His opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record.

The claimant has demonstrated sufficient impairment severity, via the medical evidence of record and reduced level of activities of daily living, to establish an inability to work beyond the light level of exertion. The claimant's residual functional capacity assessment is supported by the objective medical evidence, the opinions of the reviewing and consultative examiners, and the claimant's treatment history. No greater or additional limitations are justified.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on June 15, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

The claimant's additional restrictions of never climbing ladders, ropes, or scaffolds, no exposure to unprotected heights and only occasionally stooping, squatting, or crawling do not significantly erode the occupational base (SSR 83-14 and 85-15). Further, the GRID rules contemplate and allow for the claimant's limitation to unskilled work, as the jobs considered by the grid rules are all unskilled.

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> Based on a residual functional capacity for *nearly* the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.18.
>
> **11. The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 20, 22, 23, 26 & 27 (internal citations omitted; most emphasis in original but some added).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform "***nearly*** the full range of light work[]" and is "'not disabled'" under Grid Rule 202.18, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

5

conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Atterberry asserts four reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in relying on the grids at the fifth step of the sequential evaluation process; (2) the ALJ erred in failing to include borderline intellectual functioning as a severe impairment and in failing to incorporate the impacts of borderline intellectual functioning in the balance of the sequential evaluation process; (3) the ALJ erred in failing to include limitations identified by Dr. Fontana (e.g., occasional bending) into his RFC determination; and (4) the ALJ's RFC determination is inconsistent with the severe impairments found in this case. Because the undersigned finds that the ALJ erred to reversal with respect to plaintiff's first assignment of error, the Court has no reason to address plaintiff's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

(11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").[4]

This is a step five case (Tr. 26-27) and it has long been recognized in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). One means by which the Commissioner meets this burden is by reliance on the medical-vocational guidelines ("grids"). *Id.* at 1201-1202 (citations omitted). Exclusive reliance upon the grids is inappropriate, however, """either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.""" *Id.* at 1202 (quoting *Walker v. Bowen*, 826 F.2d 996, 1002-1003 (11th Cir. 1987), in turn quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). Normally, when non-exertional limitations are alleged "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *see Francis*, 749 F.2d at 1566 ("The preferred method of demonstrating job availability when the grids are not controlling is through expert vocational testimony"). "'It is only when the claimant can clearly do *unlimited* types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in

---

[4] The undersigned would simply suggest that it is never unwise for an ALJ, on remand, to give some consideration to the errors identified by a plaintiff on appeal to the district court.

7

the national economy.'" *Allen*, 880 F.2d at 1202 (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A March 30, 1981)); *see also Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) ("If the grids are inapplicable, the Secretary must seek vocational expert testimony."). Where non-exertional impairments are present "[t]he ALJ must '"make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."'" *Foote, supra*, 67 F.3d at 1559 (citations omitted). "If nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-1078 (11th Cir. 1996).

In *Phillips, supra*, the Eleventh Circuit reiterated its earlier holding that "'[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills[,]" and held that "[i]f *either* condition exists, the ALJ [is] required to consult a vocational expert." 357 F.3d at 1242 (emphasis in original; citation omitted). The *Phillips* court expounded at some length on the foregoing two conditions. *Id.* at 1242, 1242-1243 & 1243.

> The first condition that requires the ALJ to consult a vocational expert is when the claimant's *exertional* limitations prevent the claimant from performing a full range of employment.[5] This Court has interpreted a "full range of employment" as being able to do "unlimited" types of work at the given exertional level.

---

[5] "Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and puling." *Phillips*, 357 F.3d at 1242 n.11, citing SSR 96-4.

8

. . .

>   If the ALJ concludes that [the claimant] cannot perform a full range or unlimited types of work at the [light] level given her exertional limitations, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the [light] work level within the national economy that [the claimant] can perform. If, however, the ALJ concludes that [the claimant] can perform a full range or unlimited types of work at the [light] level despite any exertional limitations, the ALJ next must determine to what extent [the claimant's] nonexertional limitations affect her ability to secure employment at the [light] work level in the national economy.
>
>   []
>
>   When determining to what extent [the claimant's] nonexertional limitations affect her ability to secure employment in the national economy,[6] the test is slightly different. When considering [the claimant's] nonexertional limitations, the ALJ need only determine whether [the claimant's] nonexertional impairments significantly limit her basic work skills. This Court has interpreted "significantly limit basic work skills" as limitations that prohibit a claimant from performing "a *wide* range" of work at a given work level.
>
>   If the ALJ determines that [the claimant's] nonexertional limitations do not significantly limit her basic work skills at the [light] work level, then the ALJ may rely on the grids to determine if [the claimant] is disabled. If, however, the ALJ determines that [the claimant's] nonexertional limitations significantly limit her basic work skills at the [light] work level, then the ALJ must consult a vocational expert.

*Id.* (internal citations and most footnotes omitted; emphasis in original).

---

[6] "Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands." *Phillips,* 357 F.3d at 1242 n.11, citing SSR 96-4. The Commissioner's regulations set forth examples of nonexertional limitations, as follows: "(i) You have difficulty functioning because you are nervous, anxious, or depressed; (ii) You have difficulty maintaining attention or concentrating; (iii) You have difficulty understanding or remembering detailed instructions; (iv) You have difficulty in seeing or hearing; (v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or (vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(i)-(vi) (2016).

In consideration of these two conditions, initially it is clear to this Court that the first sentence of the ALJ's finding number 5 is directed to exertional limitations given the direct reference to the definition of unskilled light work contained in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (Tr. 23) and the fact that the definition of light work finds as its reference points the seven strength demands of jobs, *compare, e.g.,* 20 C.F.R. § 404.1567(b) (2016) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.") *with Phillips, supra,* 357 F.3d at 1242 n.11 ("Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling."). In that first sentence, the ALJ specifically found that Atterberry retained the "**residual functional capacity to perform *nearly* the full range of light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b).**" (Tr. 23 (some emphasis supplied).) The ALJ, however, did not explain what he meant by "*nearly*" the full range of light work and, without any explanation, this Court concludes that this determination constitutes a finding by the ALJ that Atterberry cannot, from an exertion standpoint, perform a full range or unlimited types of work at the light level. *See Fleming v. Commissioner of Social Security,* 2011 WL 4114955, *7 (M.D. Fla. Sept. 15, 2011) (ALJ found the claimant could perform a "'*minimally reduced range of light work,*'" and the district court determined that "[b]y finding Fleming can only perform a reduced range of light work, the ALJ necessarily found Fleming cannot perform an unlimited range of that category of work."). Given that the ALJ, by his own

words, found Atterberry cannot perform a full range or unlimited types of work at the light level given her exertional limitations, the ALJ should have consulted one of the vocational experts present at one of the two administrative hearings conducted in this case (*compare* Tr. 34 & 48-49 (October 31, 2013 hearing) *with* Tr. 53 & 79-80 (March 6, 2014 hearing)) to determine whether there are sufficient jobs in the national economy that Atterberry can perform in light of her impairments and limitations. *See Phillips, supra,* 357 F.3d at 1242 ("If the ALJ concludes that [the claimant] cannot perform a full range or unlimited types of work at the [light] level given her exertional limitations, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the [light] work level within the national economy that [the claimant] can perform.").

In addition to the foregoing, the Court notes that the second condition that requires consultation of a vocational expert is when the claimant's nonexertional impairments significantly limit basic work skills. *Phillips*, 357 F.3d at 1243; *see also id.* ("This Court has interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a *wide* range' of work at a given work level."). And while this Court need not reach this issue, given the previous determination concerning the existence of the first condition, the undersigned chooses to reach this issue since it provides further reason for a remand for vocational expert testimony. In regard to Atterberry's nonexertional limitations, the second and third sentences of the ALJ's finding number 5 are of import, as follows: "**She should never climb ladders, ropes or scaffolds and only occasionally stoop, squat, or crawl. She should have no exposure to unprotected heights.**" (Tr. 23.) There is no question but that the foregoing restrictions are nonexertional limitations, *compare Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (recognizing that an inability to work around unprotected heights or

dangerous machinery is a nonexertional limitation) *with Blake v. Colvin,* 2014 WL 109113, *3 (M.D. Fla. Jan. 10, 2014) (restrictions to only occasionally climbing ladders, ropes, or scaffolds, balance, stoop, kneel, crouch or crawl are nonexertional limitations), and though the ALJ specifically found these additional restrictions did not "significantly erode the occupational base" (Tr. 27, Finding No. 9, citing SSRs 83-14 & 85-15), this Court agrees with the *Blake* court, *supra,* that "Social Security Rulings do not have the force of law and are not binding on the courts[,]" *id.* at *4, citing *Miller v. Commissioner of Social Security,* 246 Fed.Appx. 660, 662 (11th Cir. Aug. 31, 2007); *see also id.* ("Furthermore, Social Security Ruling 85-15 acknowledges that the services of a vocational expert may be necessary when the effects of an individual's limitations are uncertain."), as are Eleventh Circuit decisions like *Marbury, supra. Id.* And, given the determination in *Marbury* that vocational expert testimony was needed, it being evident that the "claimant was not able to do *unlimited* types of light work" since "he was precluded from work around unprotected heights or dangerous moving machinery[,]" 957 F.2d at 839 (emphasis in original); *see also id.* ("An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range if light work is not supported by substantial evidence unless there is testimony from a vocational expert."), the undersigned can reach no other conclusion but that the ALJ in this case erred in relying exclusively on the grids and in failing to obtain the testimony of one of the two vocational experts who appeared before him (*see* Tr. 48-49 & 79-80) concerning the jobs that the plaintiff could perform in the national economy with his limitations, it being evident that plaintiff's nonexertional restrictions (that is, no ability to climb ladders, ropes, or scaffolds; an ability to perform only occasional stooping, crawling, or crouching; and an inability to be exposed to unprotected heights) preclude Atterberry

12

from performing unlimited types (or a wide range) of light work and thereby significantly limit her basic work skills. *See Blake, supra*, at *4.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 112 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 24th day of August, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**